FILED
2020 Dec-17  AM 10:50
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | |
|---|---|
| DALLAS WELDON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: |
| | ) |
| SCHUSTER ENTERPRISES, INC., a | ) |
| foreign corporation, | ) |
| | ) |
| Defendant. | ) |

## PLAINTIFF'S COMPLAINT

Plaintiff, DALLAS WELDON (hereinafter "Weldon" and/or "Plaintiff"), hereby sues SCHUSTER ENTERPRISES, INC., (hereinafter "Schuster" and/or "Defendant") and alleges as follows:

## PARTIES

1.      Plaintiff, Weldon, is a resident of Coosa County, Alabama, who has mobility disabilities and is limited in the major life activity of walking, which has caused him to utilize a wheelchair for mobility.

2.      Plaintiff advocates for the rights of similarly situated disabled persons and has acted as a "tester" for purposes of asserting his civil rights as well as for purposes of monitoring, ensuring, and determining whether places of public accommodation are in compliance with the Americans with Disabilities Act, 42

U.S.C. § 12101, *et seq.* ("ADA").

3.      Defendant, Schuster, is a foreign corporation with its principal place of business in Georgia.   Schuster owns and/or operates and/or leases several Burger King Restaurant locations and/or properties and/or facilities in Alabama and Georgia.

4.      Plaintiff has recently patronized two of Defendant's Burger King Restaurant locations located in Talladega County, Alabama. On other occasions within the last two years of the filing of this complaint, Plaintiff visited these same two locations, and he intends to continue to patronize Defendant's Burger King Locations. At these two locations, Plaintiff encountered barriers. Unless Defendant is required to remove the access barriers described below, Plaintiff will continue to be denied full access to Defendant's facilities as described and will be denied the ability to fully use Defendant's facilities.

## JURISDICTION AND VENUE

5.      This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 12188, and the ADA Accessibility Guidelines 28 C.F.R. Part 36 (hereinafter "ADAAG").

6.      Plaintiff's claims arose in this judicial district and Defendant does ongoing, substantial, business in this judicial district, such that the assertion of personal jurisdiction over this Defendant complies with fairness and does not

offend justice.

7.      Venue in this judicial district is proper under 28 U.S.C. § 1391(b) (2) in that this is the judicial district in which a substantial part of the events and/or omissions at issue occurred as Defendant's Burger King locations are situated within this judicial district.

## THE ADA AND ITS IMPLEMENTING REGULATIONS

8.      Congress enacted the ADA over thirty years ago and in so doing clearly stated its intention to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).

9.      The ADA broadly protects the rights of individuals with disabilities in employment, access to State and local government services, places of public accommodation, transportation, and other important areas of American life.  This lawsuit focuses on Defendant's systemic willful failure to maintain the accessible elements of its places of public accommodation in compliance with the ADA.

10.     Title III of the ADA generally prohibits discrimination against individuals with disabilities in the full and equal enjoyment of public accommodations, 42 U.S.C. § 12182(a), and prohibits places of public accommodation, either directly, or through contractual, licensing, or other arrangements, from denying individuals with disabilities the opportunity to

participate in a place of public accommodation, 42 U.S.C. § 12182(b)(1)(A)(i), or denying individuals with disabilities the opportunity to fully and equally participate in a place of public accommodation, 42 U.S.C. § 12182(b)(1)(A)(ii).

11.    A unanimous Supreme Court upheld the constitutionality of the public accommodations provisions of the Civil Rights Act of 1964 in *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241 (1964). The Supreme Court agreed that Congress possessed the authority to outlaw discrimination in public accommodations on the basis of race. *Id.* at 261-62. Congress acted again to outlaw discrimination in public accommodations—this time on the basis of disability. 42 U.S.C. § 12182(b)(1)(D).

12.    Title III of the ADA prohibits discrimination on the basis of disability "in the full and equal enjoyment of [accommodations] by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Congress made no distinction whether the owner was a natural person, a partnership, a corporation, or any other type of structure allowed under the law. Congress outlawed discrimination on the basis of disability.

13.    The ADA expressly contemplates loss of opportunity as an actionable injury. Congress included within the Act the stated goal of assuring "equality of opportunity" to disabled persons. 42 U.S.C. § 12101(a). The ADA provides a cause of action to "any person who is being subjected to discrimination" and expressly

states that "it shall be discriminatory to subject an individual or class of individuals on the basis of disability ... *to a denial of the opportunity* of the individual *or class* to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." 42 U.S.C. § 12182(a), (b) (emphasis added). A disabled plaintiff is denied the opportunity to participate in or benefit from the goods and services, which is among the ADA's general prohibitions, in a number of ways, including a defendant's "failure to remove architectural barriers," which is among the specific prohibitions listed in § 12182(b). Thus, the disabled plaintiff suffers an ongoing injury so long as he or she is effectively denied the opportunity to participate in or benefit from the goods, services, facilities, advantages, or accommodations of the entity.

## PLAINTIFF'S EXPERIENCE AT DEFENDANT'S LOCATIONS

14.     Weldon visited two Burger King restaurant properties owned and/or operated by Defendant within the last two years, where he experienced unnecessary difficulty and risk in the exterior and interior areas of the facilities due to inaccessible parking, inaccessible and/or obstructed accessible routes and/or paths of travel, inaccessible entrances/exits, inaccessible restroom entrances, inaccessible condiment dispensers and counters in addition to other ADA accessibility violations as set forth in more detail below.

15.     As a result of Defendant's non-compliance with the ADA, Plaintiff

Weldon's ability to access and use Defendant's facilities has been significantly impeded and he has suffered an injury-in-fact in precisely the manner and form that the ADA was enacted to guard against.

16.      Plaintiff Weldon has visited the facilities owned, operated, and/or controlled by Defendant located at 202 W. Ft. Williams Rd, Sylacauga, AL. 33944 and US Highway 280, Childersburg, AL. within the last two years, where he experienced unnecessary difficulty and risk in the exterior and interior facilities of the property because of barriers which prevented and continue to prevent safe and equal access to goods and services for people in wheelchairs and/or with mobility impairment, which constitute discriminatory ADA accessibility violations at Defendant's properties as set forth in more detail below.

17.      For example, at the Defendant's Burger King located at 202 W. Ft. Williams Rd, Sylacauga, AL, Weldon encountered several barriers and issues, as set forth in more detail below:

The accessible parking is not located on the shortest accessible route to the accessible entrance;

The parking surface of one or more of the designated accessible parking spaces is not level as defined by the ADA and has persistent and/or variable slopes within the space that exceed the ADAAG maximum slope allowance (2.083%) for level surfaces;

The ramp from the parking facility to the accessible entrance route has, by design, changes in direction within the ramp run resulting in compound cross slopes;

The self-service ketchup dispenser is installed or otherwise positioned so that the operable parts exceed the ADAAG maximum reach range requirements (obstructed high side reach) for equal access to wheelchair users;

The self-service ketchup dispenser is installed on a counter surface that is too high (over 34 inches) for equal access to wheelchair users;

The self-service napkin dispenser is installed on a counter surface that is too high (over 34 inches) for equal access to wheelchair users;

The entry door to one or both accessible restrooms (men's and women's) closes too quickly (in less than 5 seconds from an open position of 90 degrees to a position of 12 degrees from the latch) prohibiting equal access to wheelchair users;

The self-service salt/pepper packet dispensers and the ketchup portion cup dispenser are installed or otherwise positioned so that these items are beyond the ADAAG maximum reach range allowances for equal access to wheelchair users;

The self-service salt/pepper packet dispensers and the ketchup portion cup dispenser are installed on a counter surface that is too high (over 34 inches) for equal access to wheelchair users.

On information and belief, some or all of these barriers remain at this location.

18.     For example, at the Defendant's Burger King located at 33944 US Highway 280, Childersburg, AL, Weldon encountered several barriers and issues, as set forth in more detail below:

There is no upright signage identifying one or more of the designated accessible parking spaces;

The accessible parking is not located on the shortest accessible route to the accessible entrance;

The parking surface of one or more of the designated accessible parking

spaces is not level as defined by the ADA and has persistent and/or variable slopes within the space that exceed the ADAAG maximum slope allowance (2.083%) for level surfaces;

The surface of one or more of the access aisles serving the designated accessible parking spaces is not level as defined by the ADA and has persistent and/or variable slopes within the aisle that exceed the ADAAG maximum slope allowance (2.083%) for level surfaces;

The accessible route from the ramp to the accessible entrance has an excessive cross slope (over 2.083%);

The accessible entrance door(s) closes too quickly (in less than 5 seconds from an open position of 90 degrees to a position of 12 degrees from the latch) prohibiting equal access to wheelchair users;

The self-service fountain drink lid dispenser is installed or otherwise positioned so that one or more size variations of the fountain drink lids are beyond the ADAAG maximum reach range allowances for equal access to wheelchair users;

The self-service salt/pepper packet dispensers and the ketchup portion cup dispenser are installed on a counter surface that is too high (over 34 inches) for equal access to wheelchair users;

The self-service drinking straw dispenser is installed on a counter surface that is too high (over 34 inches) for equal access to wheelchair users;

The self-service coffee lid dispenser and the coffee stirrer dispenser are installed on a counter surface that is too high (over 34 inches) for equal access to wheelchair users;

The self-service coffee condiment dispenser is installed on a counter surface that is too high (over 34 inches) for equal access to wheelchair users;

The self-service ketchup dispenser is installed or otherwise positioned so that the operable parts exceed the ADAAG maximum reach range requirements (obstructed high side reach) for equal access to wheelchair users;

The self-service ketchup dispenser is installed on a counter surface that is too

high (over 34 inches) for equal access to wheelchair users;

The ground surface of the outside playground use zone consists of an inaccessible material and no accessible routes within the playground use zone are provided from the perimeter of the playground to all accessible play structures and/or components within the playground;

The entry door to one or both accessible restrooms (men's and women's) closes too quickly (in less than 5 seconds from an open position of 90 degrees to a position of 12 degrees from the latch) prohibiting equal access to wheelchair users;

The entry door to one or both accessible restrooms (men's and women's) requires excessive force (more than 5 foot pounds-force) to open;

On information and belief, some or all of these barriers remain at this location.

20.     The foregoing violations are violations of the 1991 Americans with Disabilities Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design, as adopted by the U.S. Department of Justice.

21.     The discriminatory violations described above are not an exhaustive list of the Defendant's ADA violations as Plaintiff is not required to engage in a futile gesture pursuant to 28 C.F.R. Part 36, § 36.501. Plaintiff requires the inspection of the Defendant's subject property in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to access. Once the Plaintiff personally encounters discrimination or learns of discriminatory violations through expert findings of personal observation, he has actual notice that the defendant does not intend to comply with the ADA. In order to remedy this

discriminatory situation, the Plaintiff requires an inspection of the Defendant's place of public accommodation to determine all of the areas of noncompliance with the Americans with Disabilities Act impacting the Plaintiff and all other individuals with disabilities similarly situated.

22.    The individual Plaintiff and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendant's building and facilities, and have otherwise been discriminated against and damaged by the Defendant because of the Defendant's ADA violations, as set forth above. The individual Plaintiff, and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

23.    The barriers to equal access described herein constitute substantial and pervasive discriminatory barriers to equal access which seriously affect the civil rights of individuals with disabilities, including Plaintiff's. To date, the discriminatory barriers still exist at the subject facility as Defendant has failed to remove, repair, or otherwise alter said barriers in such a way as to effectuate compliance with the provisions of the ADA. Furthermore, the Defendant continues to discriminate against the Plaintiff, and all those similarly situated by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities,

privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

24.     Plaintiff is without adequate remedy at law and is suffering irreparable harm. Considering the balance of hardships between the Plaintiff and Defendant, a remedy in equity is warranted. Furthermore, the public interest would not be disserved by a permanent injunction. Plaintiff has retained the undersigned counsel for the filing and prosecution of this action and is entitled to recover attorney's fees, costs and litigation from the Defendant pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

25.     Defendant is required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its places of public accommodation that have existed prior to January 26, 1992, 28 CFR 36.304(a); additionally, if there has been an alteration to Defendant's place of public accommodation since January 26, 1992, then Defendant is required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including people who use wheelchairs, 28 CFR 36.402; and finally, if the Defendant's facilities were designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28

CFR 36.401, then the Defendant's facilities must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

26.     Notice to Defendant is not required as a result of Defendant's failure to cure the subject violations as required by 28 CFR 36.304(a), 28 CFR 36.401, and/or 28 CFR 36.402. The Plaintiff states that as soon as he encountered and/or observed the architectural barriers at the subject location he had actual notice that the Defendant does not intend to comply with the ADA. All other conditions precedent have been met by Plaintiff or waived by the Defendant.

27.     Pursuant to 42 U.S.C. § 12188, this Court is vested with the authority to grant Plaintiff injunctive relief; including an Order to alter the subject facilities to make them readily accessible to, and useable by, Plaintiff and all other individuals with disabilities to the extent required by the ADA; or by closing the subject facilities until such time as the Defendant cures its violations of the ADA. The Order shall further require the Defendant to maintain the required accessible features on an ongoing basis.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests:

The Court issue a Declaratory Judgment that determines that the Defendant at the commencement of the subject lawsuit is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*;

A. Injunctive relief against the Defendant, including an order to make all readily achievable alterations to the facilities; or to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendant to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of auxiliary aids and services;

B. An award of attorneys' fees, costs (including expert fees), and litigation expenses pursuant to 42 U.S.C. § 12205;

C. An award of interest upon the original sums of said award of attorney's fees, costs (including expert fees), and other expenses of suit; and

D. Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

Respectfully submitted this the 17th day of December, 2020.

/s/ Peter H. Burke
Peter H. Burke (ASB-1992-K74P)
pburke@burkeharvey.com
BURKE HARVEY, LLC

13

3535 Grandview Parkway, Suite 100
Birmingham, Alabama 35243
Phone: 205-930-9091
Fax: 205-930-9054

*/s/ John Allen Fulmer II*_____
John Allen Fulmer II (ASB-1089-O42F)
FULMER LAW FIRM, P.C.
2330 Highland Ave
Birmingham, AL 35205
205-534-2081

*Attorneys for Plaintiff DALLAS WELDON*

## PLEASE SERVE DEFENDANTS BY CERTIFIED MAIL AT:

Schuster Enterprises, Inc.
c/o Thomas W Kant
1135 280 Bypass
Phenix City, AL 36867